Brenna Larkin (ASB # 031156)
P.O. Box 281
Tumacacori, AZ 85640
(520)405-0843
Brennalarkinattorney@gmail.com

Attorney for Defendant

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| United States of America, | Case Number: CR-24-03875-TUC-SHR(BGM) |
|---|---|
| Plaintiff | |
| vs. | **Defendant's Sentencing Memorandum** |
| Danield Najera-Armenta, | |
| Defendant | |

COMES NOW the defendant, Danield Najera-Armenta, by and through his attorney the undersigned, and hereby submits the following sentencing memorandum for the Court's consideration.

The defendant bases her requests on the following memorandum of points and authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**Facts**

Mr. Najera-Armenta was one of three siblings. He and his brothers were initially born in California. Mr. Najera-Armenta was nine years old when he, his siblings and his mother moved to Arizona. Although at the time Mr. Najera-Armenta was not able to fully understand the reasons for

Sentencing Memorandum                    1

the move, as an adult he came to understand that his mother wanted to remove him and his brothers from the influence of gang violence that was prevalent in their area.

Mr. Najera-Armenta's father had some association with a gang, but Mr. Najera-Armenta does not know details of his father's involvement. Mr. Najera-Armenta's father was incarcerated for various time periods throughout Mr. Najera-Armenta's life. Mr. Najera-Armenta was insulated from this instability by his mother's decision to move to Arizona.

Mr. Najera-Armenta maintained a positive, though distant relationship with his father until his father passed away. Mr. Najera-Armenta believes his father passed away in a violent altercation related to gang activity. He describes this as a very sad event, especially because his father was finally beginning to change the way he was living.

Mr. Najera-Armenta traveled to California as a child to spend time with his father during the summer months. However, the more Mr. Najera-Armenta became established in Arizona the less frequent these trips became. Mr. Najera-Armenta stopped seeing his father all-together in high school because Mr. Najera-Armenta had a positive peer group. Prior to his father passing away, Mr. Najera-Armenta would call him every day at the end of each shift.

Mr. Najera-Armenta managed to stay away from gangs and criminal activity for the entirety of his youth. Mr. Najera-Armenta did not fully graduate high school. He has a few credits remaining before he can receive his diploma. Mr. Najera-Armenta had to drop out of school to begin working to help his mother. He started working at the age of 18, he moved out of his mother's home at the age of 19, and he has been working ever since.

At the same time that Mr. Najera-Armenta began working, he had to quit coaching for AZ Street Ball. Before leaving for work, Mr. Najera-Armenta coached a basketball team. His little

Sentencing Memorandum                                    2

brother and cousins were part of the team. Once he began working, he could no longer engage in the community in this way. Mr. Najera-Armenta still misses this.

In spite of the need to begin working early, and in spite of the potential pitfalls related to his father's influence, Mr. Najera-Armenta had a happy and successful childhood.

Mr. Najera-Armenta's older brother was not so lucky. The older brother made the decision to move back to California to be with their father, and since that decision his life has taken a turn. Mr. Najera-Armenta's older brother has struggled for years with drug addiction and unemployment. Mr. Najera-Armenta has had to pick his brother up from jail on more than one occasion. Mr. Najera-Armenta took on the role of a responsible person early on in his life, and he has seldom strayed from that role.

The offense that Mr. Najera-Armenta committed in this case was uncharacteristic of him, and it was influenced by a friend with whom he was living at the time.

In 2019, Mr. Najera-Armenta was living with a friend of his (Pedro Adan Sevilla). Mr. Sevilla was tangentially related to criminal activity because his brother was (according to Mr. Sevilla) affiliated with a street gang called "Los Quatro Milpas." As a result of this connection, Mr. Sevilla had a safe in his bedroom that he was holding for the gang. Mr. Najera-Armenta was aware of the safe, but unaware of its contents or the circumstances surrounding the safe.

For some time, unbeknownst to Mr. Najera-Armenta, Mr. Sevilla was making straw purchases of firearms. Mr. Sevilla came into contact with another person by the name of Francisco Dario Mora. Mr. Sevilla claims he met Mr. Mora in 2019, and Mr. Mora directed Mr. Sevilla to make various firearms purchases. Mr. Mora paid Mr. Sevilla $100.00 per weapon. Mr. Sevilla also admitted to traveling with Mr. Mora to the border to transport the firearms into Mexico. Once in Nogales, Sonora Mr. Sevilla would get out of the car and Mr. Mora would travel by himself to deliver the firearms.

Agents discovered that Mr. Sevilla began purchasing weapons in 2018, and Mr. Mora began purchasing weapons in 2016. It was clear that Mr. Mora had recruited Mr. Sevilla to purchase and transport firearms together.

In addition to transporting the firearms, Mr. Sevilla also plead guilty to possession of fentanyl with intent to distribute, as well as possession of a firearm in connection with a drug crime. Clearly, Mr. Sevilla (along with Mr. Mora) was engaged in a fairly extensive pattern of criminal activity.

Mr. Najera-Armenta was eventually recruited by Mr. Sevilla and Mr. Mora to purchase some firearms.

Mr. Najera-Armenta was financially struggling at the time, and he therefore allowed himself to be influenced by Mr. Sevilla. Mr. Sevilla was Mr. Najera-Armenta's friend at the time, and Mr. Najera-Armenta had a difficult time telling him no. Mr. Najera-Armenta was also only 21 years old at the time that this offense took place.

On July 10, 2019 and on August 31, 2029, Mr. Najera-Armenta made purchases of a total of five firearms on Mr. Mora and Mr. Sevilla's behalf.

Only a few months later, on November 13, 2019, law enforcement executed a warrant on the house occupied by Mr. Najera-Armenta and Mr. Sevilla, and they questioned both about the firearms purchases. Mr. Najera-Armenta readily admitted that he had purchased the firearms for Mr. Mora, and that he was aware that Mr. Mora and Mr. Sevilla were transporting the weapons into Mexico.

Mr. Najera-Armenta was not arrested at that time. Instead, the government waited until June 26, 2024 to indict Mr. Najera-Armenta (almost 4 years after the original offense).

Between the time that this offense has occurred and the date of sentencing in this case, Mr. Najera-Armenta has taken significant steps to improve his circumstances and to live a better life.

Sentencing Memorandum                                      4

Mr. Najera-Armenta has maintained employment, and he has achieved certification as a forklift driver to enable him to gain more income. Mr. Najera-Armenta is in a stable relationship with the mother of his two young children. His girlfriend stays at home to care for the children, and Mr. Najera-Armenta works to support her and the two children. Mr. Najera-Armenta is the sole provider for the family, and despite his advances at work the family financial situation is very tight.

Mr. Najera-Armenta used to use recreational marijuana, but he stopped without assistance after he was indicted. Mr. Najera-Armenta has not violated any conditions set for him by pretrial services. He has tested clean repeatedly and maintained good communication with pretrial services.

**Procedural History / Plea Agreement**

Mr. Najera-Armenta's plea stipulates that he will not receive a sentence higher than the low-end of the guideline calculation.

The plea also allows Mr. Najera-Armenta to request a variance.

**Factors in Support of a Variance**

Pursuant to 18 U.S.C. 3553(a), the court must consider a number of different factors in determining the appropriate sentence. Specifically, the court is to consider the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. 3553(a)(1).

Additionally, the sentence imposed must reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with any treatment deemed necessary. 18 U.S.C. 3553(a)(2).

Sentencing Memorandum                    5

The court is to consider the sentencing guideline provisions for the type of offense involved, and for the category of the defendant involved. 18 U.S.C. 3553(a)(4). However, the guideline calculations are merely one factor out of seven that the court is to consider when determining a just and appropriate sentence. The district court must consider the guidelines, but the court cannot impose a sentence that is greater than necessary to accomplish the sentencing goals set out in 18 U.S.C. 3553(a). *Kimbrough v. United States*, 552 U.S. 85 (2007).

Where the guideline provisions fail to properly reflect the considerations enumerated in 3553(a), the district court may depart from the guidelines. *United States v. Regalado*, 518 F.3D 143 (2d Cir. 2008).

Courts are permitted to vary downward even where a related departure is denied. *United States v. Jenkins*, 537 F.3D 1 (1st Cir. 2008).

In this case, the defense requests a variance for the following reasons:

### Defendant's Cooperation

Mr. Najera-Armenta was cooperative with law enforcement when they arrived and questioned him. He admitted to his involvement in the offense, and he admitted to his knowledge of what the other persons involved were doing.

### Long Sentence would Impair Defendant's Rehabilitation

Mr. Najera-Armenta has never been incarcerated and has no criminal history. A sentence of incarceration would be an over-intervention in this case that would create more damage than it would mitigate. Mr. Najera-Armenta would lose his job, his family would have to find a way to support

Sentencing Memorandum                                6

themselves without him, and Mr. Najera-Armenta would be deprived of a close relationship with his children during very important and formative years.

### Prison Significance for First Time Offenders

Mr. Najera-Armenta is a first-time offender. For this reason, the defense asks the court to grant him a variance.

### Post-Offense Rehabilitation

Since this offense took place (almost 6 years ago), Mr. Najera-Armenta has made every improvement to his life that he possibly could. He cut ties with the "friends" who got him involved in this offense, he has a stable relationship with his girlfriend, he is a supportive and present father to his children, he has made himself more employable by obtaining special certifications, and he has maintained and steadily improved his employment. These are significant reasons for a variance. *See Pepper v. United States*, 562 U.S. 476 (2011).

### Delay of Prosecution

The offense in this case took place almost six years ago. The prosecution in this case did not commence until almost five years after the date of the offense. The significant time period that has elapsed and delayed the prosecution would render a sentence of incarceration greater than necessary to achieve statutory goals.

Sentencing Memorandum                    7

### *Age*

Mr. Najera-Armenta was only 21 years old when she committed this offense. Immaturity and the ability to be influenced by others at the time of the offense are significant considerations and support a variance. *Gall v. United States*, 552 U.S. 38 (2007).

### *Effect of Imprisonment on Third Parties*

While the guidelines do not encourage departures on the basis of the effect of imprisonment on a defendant's innocent family members, various courts have granted downward variances on this basis. *United States v. Lehmann*, 513 F.3d 805 (8th Cir. 2008).

In this case, Mr. Najera-Armenta's potential incarceration would be devastating to his girlfriend and their two young children. Mr. Najera-Armenta's girlfriend would have to stop the important task of being a stay-at-home mom for her children, and she would have to work to support the children.

Effectively, the young children involved would be significantly deprived of a relationship with both of their parents during formative years.

These facts support a variance in this case.

### *Minimal Level of Participation / Proportionality of Sentencing*

Mr. Najera-Armenta was a low-level participant in this scheme. He was recruited in time only to complete two purchases before law enforcement got involved. The other two men involved (Sevilla and Mora) had been participating in the scheme for much longer (Sevilla since 2018 and Mora since 2016). Each of the other two participants had a much more damaging impact on the community than Mr. Najera-Armenta.

Sentencing Memorandum                    8

Mr. Najera-Armenta was actively recruited by the other two people. He would not have decided to participate in this sort of activity without the active influence and encouragement of the others involved.

Mr. Najera-Armenta's activities were confined to two occasions of straw purchasing. Mr. Najera-Armenta never crossed into Mexico like Mr. Sevilla and Mr. Mora did, and Mr. Najera-Armenta did not conceal weapons in his vehicle and deliver them to their destination in Mexico like Mr. Mora did.

Unlike Mr. Sevilla, Mr. Najera-Armenta was also not involved in any drug trafficking, nor did Mr. Najera-Armenta possess a weapon in connection with a drug offense (like Mr. Sevilla did).

Mr. Sevilla received a total sentence of 144 months. Mr. Mora received a sentence of 60 months. The guideline calculations in this case (and the plea agreement) would cap Mr. Najera-Armenta's sentence at 18 months. Clearly, Mr. Najera-Armenta's case is extremely different from those of Mr. Sevilla and Mr. Mora.

### *Aberrant Behavior*

Mr. Najera-Armenta has no criminal history. Apart from this offense, Mr. Najera-Armenta's life has been one of hard work, steady advancement, and a keen responsibility to take care of other people.

This was an isolated mistake in his otherwise law-abiding life, and this fact supports a variance. *See, e.g., United States v. Howe*, 543 F.3d 128 (3rd Cir. 2008).

Sentencing Memorandum                   9

***Low Risk of Recidivism***

Due to his youth (particularly at the time of the offense), lack of criminal history, significant efforts to rehabilitate himself, and his changed living circumstances, Mr. Najera-Armenta presents a low risk of recidivism. This is a factor that supports a variance. *See e.g. United States v. Ross*, 557 F.3d 237 (5th Cir. 2009).

***Employment History***

Mr. Najera-Armenta has remained consistently employed with special certifications to further his opportunities.

***Family Support***

Mr. Najera-Armenta has the support of his mother, siblings, girlfriend, in-laws and extended family members.

***Totality of the Circumstances***

Even where each individual factor taken separately might not warrant a variance, the totality of the circumstances may justify a variance. *See e.g. United States v. Martin*, 520 F.3d 87 (1st Cir. 2008).

In this case, the totality of the mitigating factors justifies a variance.

**Conclusion**

In this case, the guidelines do not properly reflect the purposes that are enumerated in 18 U.S.C. 3553(a).

Sentencing Memorandum                    10

A prison sentence in this case would be greater than necessary to comply with the purposes set forth by statute. The recommended sentence of probation, on the other hand, is sufficient, but not greater than necessary, to accomplish the purposes of the statute.

A sentence of probation will reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, protect the public from the defendant, and provide the defendant with the necessary treatment and experience to continue to reform her life.

For the foregoing reasons, the defense requests that the court follow the recommendation of the probation department. The defendant has demonstrated his low risk of recidivism and his ability to fully comply with probation.

RESPECTFULLY SUBMITTED this _4___ day of _June_____ month, 2025.


        __/s/__Brenna Larkin_____
        Brenna Larkin, Attorney for Defendant


Copies of the foregoing
Sent/delivered this _4___ day of _June____ month, 2025 to:

All ECF Participants

Sentencing Memorandum                                11